In the Matter of the Application of A. SIMIS, JR., Respondent, as
President of the Board of Charities and Corrections of the City
of Brooklyn, for a Writ of Mandamus, Requiring GEORGE W.
PALMER, as Comptroller, etc., Appellant, to Certify the Contract
of THOMAS G. CARLIN.

*Brooklyn — contract by the department of charities and corrections — certificate by
the comptroller thereon that a fund exists for its payment — Laws 1888, chap. 583,
tit. 6, § 1, tit. 18, § 3; 1889, chap. 382; 1896, chap. 183.*

Authority to execute a contract for the erection of a building for the department
of charities and corrections is now vested in the commissioner of city works of
the city of Brooklyn, when authorized so to do by the common council of the
city, upon which contract the comptroller must certify or indorse "that the
means required to make the payments under such contract are provided and
applicable thereto."

The comptroller of the city of Brooklyn will not be compelled by mandamus to
certify upon a contract, made by a department of the city government, that the
means to make the payments thereunder are provided, when the only fund
applicable thereto is represented by earnings and receipts paid to the comp-
troller by that department, as the charter of the city of Brooklyn directs that
no money shall be withdrawn from the treasury except pursuant to an
appropriation.

The provision in section 3 of title 18 of chapter 183 of the Laws of 1896, that
"any surplus remaining on account of any appropriation at the end of any
year may be applied as the common council may direct," relates to the fiscal
year of Brooklyn and not to the calendar year.

*Semble,* that under chapter 954 of the Laws of 1895, consolidating the govern-
ments of the city of Brooklyn and of the county of Kings, the department of
charities and corrections of the county of Kings was continued as a department
of the city of Brooklyn, vested with the same powers, duty and authority as
it possessed when the Consolidation Act took effect.

*Semble,* that the department of charities and corrections of the county of Kings
did not possess the power to erect or contract for the erection of buildings
prior to the passage of the Consolidation Act, and that that act confers no such
power.

APPEAL by George W. Palmer, as comptroller of the city of
Brooklyn, from an order of the Supreme Court, made at the Kings
County Special Term and entered in the office of the clerk of the
county of Kings on the 27th day of August, 1896, directing that a
peremptory writ of mandamus issue, directed to him, commanding

him to forthwith certify the contract of Thomas G. Carlin with the department of city works of the city of Brooklyn.

*Joseph A. Burr*, for the appellant.

*John A. Quintard*, for the respondent.

HATCH, J.:

It is conceded by the appellant that, under the act (Laws of 1895, chap. 954) which consolidated the governments of the city of Brooklyn and the county of Kings, the department of charities and corrections of said county was continued as a department of the city, vested with the same powers, duty and authority as it possessed at the time when the Consolidation Act took effect. In the absence of this concession we should hold as matter of law that such result was attained by the act. It is conceded by the learned counsel for the relator that the department of charities and corrections did not possess the power to erect, or contract for the erection of buildings, prior to the passage of the Consolidation Act, and that the latter act confers no such power. An examination of the several statutes from which has resulted the creation of this department, and which have defined its powers, amply justify the wisdom of relator's concession. These concessions reduce the question presented by this appeal to very narrow limits. It is clear that authority to execute the contract in question is vested in the commissioner of city works, when authorized by the common council of the city. We shall assume that this authority has been obtained, and that to that extent the contract is authorized. This contract, however, is without force until the comptroller shall certify or indorse upon it "that the means required to make the payments under such contract are provided and applicable thereto." (Charter City of Brooklyn [Laws of 1888, chap. 583], tit. 18, § 3.) A false certificate or indorsement by the comptroller is made a misdemeanor, and a conviction therefor forfeits his office. The court should, therefore, be able to see a clear right in the relator to the comptroller's certificate or indorsement, before issuing its mandate compelling him to a performance of the act. The resolution of the common council, which authorized the commissioner of city works to execute the contract, failed to provide for payment of

the contract price, and no appropriation has ever been made by that body of any moneys for that purpose. The contract price for the erection of the building is the sum of $39,600. At the time when the contract was presented to the comptroller for certification, the department of charities and corrections had to its credit with the comptroller only the sum of $5,050. But subsequent thereto, and about August seventh following, there was paid to the comptroller by the department of charities, earnings and receipts of money, for the fiscal year ending July 31, 1896, earned by the labor of prisoners confined in the penitentiary, aggregating the sum of $45,742.48. The relator's claim now is that this sum was available to be applied in discharge of the sum required to be paid in fulfillment of the contract. We are cited to no authority or statutory provision which makes the moneys paid · by the department to the comptroller the subject of exclusive application to the needs of the department. On the contrary, when they are paid over to the city officials charged with the duty of receiving the same, they become city moneys and are the subject of appropriation for city purposes by the body charged with that duty. The relator relies upon section 3 of chapter 382, Laws of 1889, to support the proposition that the moneys are exclusively available for the needs of the particular department from which they came. No such provision is found in the law, nor are we able to find any provision of law which works such a result. The charter of the city of Brooklyn provides (Tit. 6, § 1) *inter alia* that no moneys shall be drawn from the treasury except in pursuance of an appropriation by the common council or under the provisions of existing laws. It is conceded that there is no resolution of the common council which appropriates any moneys for this purpose, and there is no provision of existing law which can work that result. We must bear in mind that the comptroller, before he certifies the contract, must be possessed of a sum of money which he may lawfully apply to the particular purpose, and which is sufficient therefor. Funds in his hands which may be appropriated for other purposes are not such moneys no matter from what source they may be derived. At the time when this contract was presented to the comptroller for certification the fiscal year of the city applicable to this department was from August first to August first. (Laws of 1896, chap. 183.) The

appropriation for the department had been made prior to July 1, 1895. By the provision of the charter (Tit. 18, § 3) it is stated: "Any surplus remaining on account of any appropriation at the end of any year may be applied as the common council may direct." This provision clearly relates to the fiscal year and not to the calendar year. The payment to the comptroller of the balance of earnings for the fiscal year was made after the 1st day of August, 1896, and consequently after the expiration of the fiscal year. This made the fund then in the comptroller's hands a surplus over the needs of the department for that year, and the provision of the charter above quoted applied thereto. The learned court below seems to have assumed that the provision of the charter applied to the calendar year, in which event the condition might have been changed. There seems to have existed a clear misapprehension in the mind of the learned court below, respecting the admission of the corporation counsel, and the counsel for the relator relies upon such admission now. But he has enlarged it beyond the bounds of recognition. The court below stated the admission in these words, "that the comptroller could not apply the credits of the department to any other purpose than those of the department." The relator's counsel says the corporation counsel "expressly conceded that the $45,000 now in the hands of the comptroller as earnings of the department of charities cannot be used for any other purpose except for purposes of the department of charities." What the corporation counsel did concede was that the comptroller had no power to expend for any other purposes money to the credit of the department. And this is quite true. But this is very far from an admission that the money then in the comptroller's hands stood to the credit of the department, or that it was not the subject of appropriation by the common council. It would be quite true, as the corporation counsel said, that the comptroller could not apply the money standing to the credit of the department. But the common council could, which is the essential fact. There is no proof that the payment of the $45,000 was placed to the credit of the department of charities. It could not have been so placed by the comptroller, at the time when he received it, as to vest in the department any special right therein, as it then represented an unexpended balance and consequently the subject of appropriation for other purposes by

the common council. It follows that there was no fund in the comptroller's hands which he could apply in discharge of the liability created by the contract, and, in consequence, he was justified in refusing to certify or indorse the contract.

The order appealed from should, therefore, be reversed, without costs.

All concurred.

Order reversed, without costs, and motion denied.